UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL LUGO,

                                                   Plaintiff,

        -v.-

                                                   9:07-CV-879

D. VAN ORDEN, Correctional Officer,             (TJM/GJD)
Eastern Correctional Facility,

                                                  Defendant.
_____

DANIEL LUGO
00-A-1308
Plaintiff, *pro se*

CHRISTOPHER A. HALL, Asst. Attorney General
Attorney for defendant

THOMAS J. McAVOY, Senior United States District Judge

## MEMORANDUM DECISION and ORDER

        In this civil rights complaint, plaintiff alleges that defendant, Corrections Officer Van Orden, retaliated against plaintiff for the exercise of his First Amendment rights. (Dkt. No. 1). Plaintiff seeks substantial monetary relief. Presently before the court is the plaintiff's motion for summary judgment. (Dkt. No. 12). Defendant opposes plaintiff's motion and has cross-moved for summary judgment. (Dkt. No. 15). Plaintiff has filed a "Reply." (Dkt. No. 18). For the following reasons, this court finds that there are questions of fact, preventing summary judgment for either party.

## DISCUSSION

**1.**     **Facts**

        Plaintiff alleges that at 6:46 p.m. on June 11, 2006, while he was incarcerated in Eastern Correctional Facility, he was let out of his cell to go to the law library. Compl. at 3. Plaintiff states that when he got to the front of the gallery, he overheard another inmate ask the defendant why the inmate was not let out of his cell earlier with the "auditorium run." *Id.* Plaintiff claims that the defendant told the other inmate that defendant had "pulled the break lever" earlier to let the inmates

out who were going to the auditorium. When the other inmate told defendant that the inmate's cell did not open, plaintiff got involved in the conversation and stated that his cell had not opened either. *Id.* at 4.

Plaintiff states that after this conversation, and before he left the company to go to the law library, he saw Officer Santiago[1] and asked Officer Santiago if the inmates going to the law library were still let out at the same time as those going to the auditorium. *Id.* Officer Santiago stated that the two sets of inmates were let out at the same time. Plaintiff complained that his cell was not opened, nor did he hear that the cells were being opened for the "auditorium run." *Id.* Plaintiff then went to the law library. *Id.*

Plaintiff claims that while he was working in the law library, the officer on duty in the law library told plaintiff that he had to return to his housing unit. *Id.* When plaintiff arrived at the unit, defendant told plaintiff that he was being "locked-up," and when plaintiff asked the reason for his confinement, defendant stated "Movement." *Id.* Plaintiff claims that when he asked defendant's name, he would not give it to him and instead told plaintiff to "get it off the ticket." *Id.* Plaintiff was served with a misbehavior report the following day, charging him with violating Rule 109.12 (Movement) and Rule 107.20 (Lying/False Statements). *Id.* Plaintiff claims that defendant attributed a statement to plaintiff that he never made. The charges were both dismissed after a disciplinary hearing held on June 16, 2006. *Id.*

Plaintiff claims that defendant Van Orden wrote the misbehavior report in retaliation for the exercise of plaintiff's first amendment right to ask Officer Santiago about the opening of the cells on June 11, 2006.

---

[1] Plaintiff identifies Officer Santiago as the "A-Officer." Compl. at 4.

**2.     Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*. However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*.

In this case, both parties have moved for summary judgment. (Dkt. Nos. 12, 15).  Thus, both parties claim that the facts are undisputed and that judgment may be rendered as a matter of law.

**3.     Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. §1997e(a) requires an inmate to exhaust all available administrative remedies prior to bringing a federal action.  This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. See e.g. *Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004).  In this case, plaintiff did bring a grievance and appealed the grievance to the highest level available.  Defendant does not claim that plaintiff failed to bring a grievance or did not appeal the grievance to the highest level, rather, defendant argues that plaintiff did not ***properly*** exhaust his administrative remedies because he did not mention the word "retaliation" in his grievance. Def. Mem. of Law at 7 (Dkt. No. 15-6).

In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23 (2007), the Supreme Court held that in

order to properly exhaust an inmate's administrative remedies, he must complete the administrative review process in accordance with the applicable state rules. *Id*. (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court.  548 U.S. at 90-103.  However, the Court in *Jones* held that proper exhaustion does ***not*** necessarily include a requirement that an inmate name all the defendants, unless the state procedure required it.  In *Jones*, the lower court had imposed a "name all defendants requirement," when the rules governing the grievance procedure simply required the plaintiff to be "as specific as possible."  127 S. Ct. at 922.

In this case, a review of the plaintiff's grievance shows that he raised the identical fact pattern, stating that defendant Van Orden falsely accused plaintiff of misbehavior, and improperly confined plaintiff to his cell for five days. Plaintiff's Ex. D at 1-3.  The plaintiff did not use the word "retaliation."  The Inmate Grievance Resolution Committee[2] was deadlocked, with one group stating that there was no evidence to support plaintiff's claim that the officer falsified evidence. *Id*. at 2.  The response from the Superintendent states that "[s]taff are on record denying that any harassment occurred." *Id*. at 4.  Plaintiff appealed, and the Central Office Review Committee stated that there was insufficient evidence to support any "malfeasance" by the employee in question. Id. at 6.  It is clear that plaintiff was making the ***same*** claim as he makes in this case, and the fact that he did not use the word "retaliation" does not lead this court to find that plaintiff failed to exhaust his administrative remedies.

---

[2] The grievance procedure in New York is a three-tiered process.  The inmate must first file a grievance with the Inmate Grievance Resolution Committee (IGRC). N.Y. COMP. CODES R. & REGS., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c).  Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id*. § 701.5(d).

**4.      Retaliation**

Any action taken by defendants in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  The law is well-settled that an inmate has no right to be free from false accusations or false misbehavior reports, unless they are made in retaliation for the exercise of a constitutional right. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)(citing *Franco*, 854 F.2d at 588-90).  In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id*. (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema*, N.A., 534 U.S. 506 (2002)).

The filing of prisoner grievances has been held to constitute conduct protected by the First Amendment. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).  This First Amendment right has been extended by some courts to the making of "oral complaints" against corrections officers. *Smith v. Woods*, 03-CV-48, 2006 U.S. Dist. LEXIS 29745, *46 n.69 (N.D.N.Y Mar. 17, 2006)(Lowe, M.J.), *app'd*, 2006 U.S. Dist. LEXIS 29744 (N.D.N.Y. Apr. 24, 2006)(Hurd, D.J.), *aff'd*, 219 Fed. Appx. 110 (2d Cir. 2007).  Defendants in this case do not contend that plaintiff's conduct in speaking to Officer Santiago was not constitutionally protected speech,[3] and thus, this court will assume for the

---

[3] The court would simply note that although there are cases extending an inmate's First Amendment rights to verbal conduct complaining of an officer's actions, it is not as "clearly established" as the right to file grievances, and there is at least one case in which a verbal confrontation, complaining about an officer's conduct has not been

5

purposes of this order, that plaintiff did *complain*[4] to Officer Santiago about defendant Van Orden, and that this conduct was protected.

Plaintiff alleges that defendant Van Orden wrote a false misbehavior report against plaintiff in retaliation for plaintiff's protected conduct. Plaintiff claims that defendant Van Orden attributed a statement to plaintiff that plaintiff did not make. Compl. at 4. Plaintiff claims that he was confined to his cell pending the misbehavior report, and that the charges were ultimately dismissed at the disciplinary hearing, thus, he was improperly confined for approximately five days as a result of the alleged retaliatory conduct. Plaintiff claims that this conduct constitutes "adverse action."

Defendant argues that there was no adverse action in this case because plaintiff was not deterred from exercising his constitutional rights. It has been held that "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Odom v. Dixion*, 04-CV-889, 2008 U.S. Dist. LEXIS 11748, *62-63 (W.D.N.Y. Feb. 15, 2008)(quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)). Defendant argues that plaintiff in this case was not deterred because he filed a grievance regarding defendant Van Orden's alleged conduct.

This court disagrees with defendant's analysis in this regard. In *Gill v. Pidlypchak*, 389 F.3d 379, 383 (2d Cir. 2004), the Second Circuit held that although a plaintiff must allege some sort of

---

found entitled to First Amendment protection. *See Rodriguez v. Phillips*, 66 F.3d 470, 479 (2d Cir. 1995); *Garrido v. Coughlin*, 716 F. Supp. 98, 101 (S.D.N.Y. 1989). When the Second Circuit affirmed the District Court in *Smith, supra*, the court specifically stated that it was "assuming arguendo" that plaintiff had a constitutionally protected right to his verbal complaint. *See Smith v. Woods*, 219 Fed. Appx. 110 (2d Cir. 2007). The court in this case also points out that defendants do not allege qualified immunity.

[4] The First Amendment right involved in this case is grounded upon plaintiff's right to petition the government for "redress of grievances." *Colon v. Coughlin*, 58 F.3d at 872. A simple discussion with a corrections officer would not be protected speech unless that discussion was in the form of a complaint or concern about the officer or some policy involved. New York law also protects inmates from being disciplined for making "written or oral statements, demands, or requests involving a change of institutional conditions, policies, rules, regulations, or laws affecting an institution." N.Y. CORRECT. LAW § 138(4).

harm resulting from the adverse action, it does not always have to be a "chilling" of his protected speech. Additionally, the Second Circuit specifically stated that the defendants could not argue that just because plaintiff was not deterred from bringing a lawsuit, his speech was not "chilled." *Id.* Such a finding would result in no plaintiff being able to prevail if he was not deterred from bringing the lawsuit. *Id.* at 383-84. This finding should be contrasted with a plaintiff who continued to speak or write after the adverse action, apart from bringing the suit challenging that retaliation. *Id.*

Defendant in this case argues that plaintiff filed a grievance regarding the behavior and filed a lawsuit, thus, claiming that plaintiff could not show an adverse action. As stated above, however, since the PLRA was enacted, exhaustion of administrative remedies has been a ***requirement*** for bringing a lawsuit challenging all forms of prison conditions. 42 U.S.C. § 1997e(a). Therefore, the *Gill* reasoning would apply to any claim that plaintiff's grievance regarding the alleged retaliation would prevent the finding of "adverse action," because plaintiff was not deterred from bringing the grievance. If plaintiff did not exhaust his remedies, he could never challenge defendant's actions. Thus, defendant cannot argue that the fact that plaintiff brought a grievance regarding the issue means that he was not sufficiently "deterred."

In any event, plaintiff also claims that the adverse action included his improper confinement for five days. Defendant cites *Gill* for the proposition that in order for the defendant's conduct to be considered "adverse action," plaintiff's confinement "must have lasted for weeks." Def. Mem. of Law at 6. This court does not read *Gill* as making such a statement. The court in *Gill* stated that "defendants are correct that a plaintiff asserting First Amendment retaliation must allege some sort of harm, but they are wrong that this harm must, in all cases, be a chilling of speech. . . . In the prison context, the harm could include such an adverse action as placing a plaintiff in keeplock for a period of weeks." 389 F.3d at 383. This statement by the Second Circuit was an example of adverse action.

7

There is absolutely no finding that in order to be adverse, the keeplock[5] ***must*** have lasted for weeks.

Having said the above, it is unclear whether five days in keeplock would be enough to deter a similarly situated inmate of ordinary firmness from complaining. There are case in which seemingly less "adverse action" has been held to be sufficient to state a claim for retaliation. *See Allah v. Poole*, 506 F. Supp. 2d 174, 186-87 (W.D.N.Y. 2007)(citing cases in which a transfer to another housing unit and other less "harsh" actions may be sufficient to constitute adverse action). In *Allah*, the court pointed out that retaliation may be actionable even when the retaliatory action does not involve a "liberty" interest. *Id.* (citing *Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000)).

In *Dawes v. Walker*, 239 F.3d 489, 492-93 (2d Cir. 2001), the Second Circuit recognized that there are situations in which *de minimis* retaliation is "outside the ambit of constitutional protection." *Id*. (citing *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999)). The court in *Dawes* held that verbal harassment was insufficient to rise to the level of adverse action. *Id.* In *Dawes*, the court stated that prisoners may be required to tolerate more than either public employees or average citizens before a retaliatory action can be considered "adverse." *Dawes*, 239 F.3d at 493 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (2d Cir. 1999)). The court in *Dawes* cited *Allah v. Seiverling. Id*. (citing 229 F.3d at 225). In *Allah*, the Third Circuit held that in certain circumstances, "placement in administrative segregation would not deter a prisoner of ordinary firmness from exercising his or her First Amendment rights," however, the court was not prepared to hold that such action could never amount to adverse action. 229 F.3d at 225.

In this case, while it is a close question with the facts presently before the court, this court is not prepared to hold in a summary judgment context, that plaintiff's five days of keeplock would

---

[5] "Keeplock" is a form of disciplinary confinement where the inmate is confined to his own cell. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

never deter a prisoner of ordinary firmness from exercising his rights.

Assuming that the five day keeplock may constitute adverse action, plaintiff must then show that the protected conduct was the "substantial motivating factor," resulting in the adverse action. *Bennett v. Goord*, 343 F.3d at 137. Defendant argues that plaintiff cannot survive summary judgment if the defendant can show that he would have taken the same action "even in the absence of the protected conduct." Def. Mem. of Law at 4 (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). While the defendant's citation of the law is correct, this court cannot find that there is no question of fact regarding defendant's conduct and whether he would have taken the same action regardless of the plaintiff's complaint to Officer Santiago. Defendant argues that he charged the plaintiff with misbehavior because the plaintiff lied to Officer Santiago about the opening of the cell doors, and plaintiff was "out of place." Plaintiff argues that defendant charged him with misbehavior because plaintiff complained about defendant Lugo's failure to open the door. Defendant maintains that he did open the doors at the proper time.

These differing statements appear to raise a question of fact regarding whether defendant Lugo would have taken the same action regardless of any "protected behavior."[6] Defendant's argument hinges on the claim that plaintiff lied to Officer Santiago. While it is true that plaintiff's grievance was dismissed because "the CORC [was] not presented with sufficient evidence to substantiate any malfeasance by the employee," plaintiff's misbehavior report was dismissed because "the misbehavior report does not support the charges." Plaintiff's Ex. D at 6 & Ex. C. No party has submitted the transcript of the hearing, and thus, this court has before it only the fact that plaintiff was exonerated of any misbehavior. Clearly, defendant Lugo charged plaintiff with the misbehavior

---

[6] The court must note, however, that if plaintiff did lie to Officer Santiago, then his conduct would not have been protected in the first place. Once again, this is not an issue that can be resolved on summary judgment.

because of what plaintiff said to Officer Santiago. If plaintiff was lying, then his conduct would not have been protected in the first place, and defendant would have had a basis for filing the misbehavior report that was unrelated to any protected activity. However, if plaintiff was telling the truth, and defendant Lugo charged him with lying and being out of place because defendant Lugo wished to retaliate against plaintiff for complaining, then plaintiff might have a claim for retaliation. As plaintiff points out, Officer Santiago did not sign the misbehavior report, and the court has no idea what happened at the disciplinary hearing.

It is not the function of this court on a summary judgment motion to resolve questions of fact, it is to determine whether there are genuine issues of fact to be tried. *Fitzgerald v. Henderson*, 251 F.2d 345, 360 (2d Cir. 2001)(citing *inter alia Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In this case, the court has not been presented with sufficient evidence from either party to justify granting summary judgment.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for summary judgment (Dkt. No. 12) is **DENIED**, and it is further

**ORDERED**, that defendant's cross-motion for summary judgment (Dkt. No. 15) is **DENIED**.

Dated: July 23, 2008

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge